No. 90.—JOHN R. MATTHEWES and others, plaintiffs in error, *vs.* JOHN R. STANFORD and others, defendants in error.

[1.] A company owning land, throws it into the form of stock and allots shares of the stock to each member. It then levies an assessment from the members, on each share, and repays the assessment by an issue and sale of additional shares of stock. Afterwards, it becomes incorporated, and soon gets to be insolvent: *Held*, that the creditors of the corporation have no right to require the stockholders of the corporation to pay them the amount of the assessment.

[2] Misrepresentations made by a company before it has become a corporation, cannot, after the company has become a corporation, be made the ground of an action by creditors of the corporation, against the stockholders in the corporation.

[3.] Neither can fraudulent non-disclosures or concealments on the part of such company.

In Equity, in Habersham Superior Court. Decision on demurrer by Judge JACKSON, April Term, 1854.

This bill was filed by John R. Stanford and others, as creditors of the Habersham Iron Works Company, against John R. Matthews and others, the stockholders in the same, alleging that these persons associated themselves together and purchased a large body of land, with an iron foundry, forge saw, and grist mills, at the price of $20.000, and divided out the same among themselves in shares of $100 each; that at a meeting of these associates an assessment of ten per cent. was laid upon

each share, which was promptly paid in.   In December thereafter, they applied to and obtained from the Legislature an Act incorporating them as a body corporate.   In the said charter appears this preamble, viz : " whereas, a company has been formed for the purpose of establishing manufactories of various kinds in the County of Habersham in this State, and especially for the smelting and working of iron, making castings, nails and bar iron, and have, for these purposes, purchased an extensive body of land and water power in that county, and have now a large foundry and other machinery in actual operation, and have asked to be incorporated with such privileges as may enable them to increase their means and to extend their operations, not only in the various manufactures of iron, but to those of cotton, wool, hemp, flax and other articles essentially useful and necessary ;" that they accepted the charter and continued to act under it until 1839 ; that in 1841, the company became insolvent and ceased to carry on operations ; that relying upon the representations included in the said charter, the complainants gave credit to the company; and thus, their debts were contracted ; that they have obtained judgments on their debts and they have been found insolvent.   The bill farther alleged, that at the time of their application for a charter, the company was largely indebted for expenses and labor on account of the said property ; that the foundry was not in actual operation, and that it required $2.000 to put it into operation, which was subsequently done by means of the credit of the company ; that in 1838, on the day of the acceptance of the charter, the said associates passed an order offering for sale twenty additional shares for the purpose of paying back the assessment of ten per cent. before referred to, which was accordingly done.   All of which said acts were alleged to be frauds upon the said creditors ; and that they were ignorant of the facts until April, 1849.   The prayer was, that the stockholders might be compelled to make up the amount of their capital stock and for general relief.

The Court over-ruled a general demurrer to this bill, and this decision is assigned as error.

UNDERWOOD; T. R. R. COBB, for plaintiffs.

COBB & HULL, for defendants.

*By the Court.*—BENNING, J. delivering the opinion.

Is there any equity in this bill? If there is, it must consist in one or more of three things, of which the first is the re-payment of the ten per cent. assessment.

It appears that before the company was incorporated, it converted its land into a stock valued at $20.000, and divided this stock into two hundred shares of $100 each, and that it levied and collected an assessment of ten dollars a share on each stockholder, which it expended on its property; and that it repaid this assessment to the stockholders by an issue and sale of twenty additional shares of stock.

All this, it appears, was done *before* the company accepted the charter; that is, before it became a corporation.

This being so, the $2.000 for which the additional twenty shares sold, never got to belong to the *corporation*—never became a part of *the capital of the corporation.* That sum belonged to the company as the company stood unincorporated. And when it was applied to the payment of the assessment, it was well applied; for it was applied to the payment of a debt or debts which the company justly owed—the assessment constituting a debt or debts against the company in favor of the stockholders assessed.

And the creation of twenty additional shares of stock did not at all affect the quantity or value of the *capital* of the company. It merely diminished the value of each *share* in that capital. But this was a matter for stockholders, not for creditors.

[1.] By this operation then, nothing was abstracted from the capital of the corporation; and therefore, nothing was done by the operation of which the creditors of the corporation could

complain, for all the right they could have against the corporation, was the right to have the whole capital or property of the *corporation* applied to the payment of their debts. And that right they had, notwithstanding this operation of the unincorporated company.

There is, then, no equity in this one of the three things.

The second of the three things is the misrepresentation, that the foundry and other machinery were in actual operation, made to the Legislature in the application for the charter.

But this misrepresentation, if made, was not made by the stockholders in the corporation—those parties who are the defendants to this bill; but by the unincorporated company. If, therefore, the misrepresentation raises a liability in favor of the creditors against any persons, it is against that company as it stood unincorporated. But it is not that company that is sought to be made liable by this bill. It is the stockholders in the corporation that the bill pursues. (1 *Kelly*, 523.)

The last of the three things is the indebtedness of the company at the time of their application for a charter, and the failure to disclose that indebtedness to the Legislature.

There is no allegation in the bill, that this indebtedness of the unincorporated company was paid off by the *corporation*—no allegation that the corporation diverted any of the *corporate* property to the payment of this indebtedness, which was not its own. On the contrary, the allegations in the bill seem to seek to make the impression, either that this indebtedness has never been paid off by any one, or if by any one, by the company before it was incorporated, and after its application for incorporation.

This being so, how have these creditors been injured by this indebtedness? If it still exists, it exists against the individuals composing the company, as it stood unincorporated; and so, can never come in competition with the debts of these creditors, which are debts against the corporation. If the indebtedness no longer exists, having been paid off by the company *before* it was incorporated, then that with which it was paid off never belonged to the *corporation*; and so, was never what the cred-

itors of the corporation had a right to look to for their payment.

[3.] Again: If the non-disclosure to the Legislature of this indebtedness constituted a fraud on these creditors, by whom was it that the fraud was committed? By those failing to make the disclosure. And they were the members of the company as it stood unincorporated—not the stockholders of the corporation—stockholders, some of whom were different persons from those constituting the unincorporated company.

If, then, this non-disclosure was a fraud, the bill should have been against the parties to the fraud, instead of being as it is, against those who, in the character in which they are sued, viz: that of stockholders, were no parties to the fraud.

In this respect, this ground is like the one just considered.

There being no equity, then, in any of these three things, none is in the bill; and therefore, the demurrer should not have been over-ruled, as it was by the Court below, but should have been sustained.

For the defendants in error was cited the *New Theatre* case in the first of *Strobhart's Reports.*

There are other reasons which, as it appears to me, show a total want of equity in this bill. But these I need not state.